187 So.2d 274

**Glen T. MAGEE**

**v.**

**STATE.**

**8 Div. 27.**

Court of Appeals of Alabama.

May 31, 1966.

Glen T. Magee, pro se.

Richmond M. Flowers, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal from a judgment of the Madison Circuit Court was submitted October 21, 1965.

Magee was convicted on an indictment charging him with escaping from the custody of a penitentiary guard. Code 1940, T. 14, § 153,[1] as amended, provides:

"Any convict who escapes or attempts to escape from the penitentiary, or from any person or guard having him in charge under authority of law, either within or outside the walls of the penitentiary, before the expiration of the term for which he was sentenced, shall, on conviction be imprisoned for an additional term of not less than one year."

He was sentenced to five years imprisonment.

I.

This is an instance in which a prison break was cloaked beneath a coram nobis hearing.

Magee was subpoenaed by a fellow inmate of Kilby Prison, Luther Ricketts, to appear as a witness in his behalf at a coram nobis hearing in Huntsville January, 1963.

Magee and another witness were put in the witness room. After the other witness had testified, court officials found the door to the witness room locked. When the door was opened, the hinged bars on the outside of the window swung ajar at one end and a long rope of strips of mattress ticking was draped to the ground below.

Horace Garth, an attorney at law, discovered Magee later that night in a side yard of his home two or three blocks south of the courthouse. He called the police who picked Magee up.

Garth, who appeared as a witness for the State, was examined by Magee (Magee having consistently rejected the court's offer of counsel) on cross:

"Q Mr. Garth, you said you wasn't positive that I was the man. There is a doubt in your mind that I'm the one?

"A Well, there's not too much doubt, Mr. Magee. In my opinion, it was you.

"Q All right, sir. I want to thank you again for not shooting me.

"A I guess we are both glad of that."

II.

The State sought to prove Magee's confinement in the penitentiary in January,

---

1. This section has been recently construed by our Supreme Court so as to obviate any question of its application to the facts of instant concern. See Strickland v. State, 280 Ala. 31, 189 So.2d 771, Sept. 30, 1965).

1963, by the testimony of Mr. M. S. Dean, Records Clerk of the State Board of Corrections. Magee objected to Dean's being asked if he had Magee's records; also, as to whether or not Magee was in prisoner status January 29, 1963.

■ The court overruled all of Magee's objections to this line of questioning. This was error under the best evidence rule. See McElroy, Law of Evid. (2d Ed.), § 229.-02(3); Wright v. State, 38 Ala.App. 64, 79 So.2d 66(1) (2); Ex parte Nations, 42 Ala. App. 128, 154 So.2d 762; Code 1940, T. 15, § 27; T. 45, § 57. This latter § 57 provides:

> "§ 57. On the trial of any convict for any offense committed within the penitentiary, or other convict prison or convict camp, the fact of confinement in the penitentiary shall be presumptive evidence of a legal conviction and sentence of imprisonment, and a copy of the transcript of the conviction and sentence filed with the department and certified by it to be correct, shall be received as evidence of such conviction."

We forego construing this section as extending the penitentiary's bounds to encompass an escapee wherever he goes while his sentence remains to be endured and obeyed. However, we consider the error in allowing oral rather than documentary proof of Magee's confinement to be without injury.

The best evidence rule, like the Sabbath, was made for man, and not man for the best evidence rule.

### III.

At one point before the trial began, Magee sought to have some more of his fellow convicts brought up to Madison County to testify in his behalf.

Magee was indicted at the May 1963 Term of the Madison Circuit Court. The true bill was filed May 10, 1963. It was March 18, 1964, before Magee was brought to trial. Following its caption, the transcript of evidence states:

"APPEARANCES: David Thomas, Esq., for the State of Alabama

Defendant not represented by counsel.

"TRIAL BEFORE THE HONORABLE DAVID R. ARCHER, JUDGE, AND A JURY.

"THE COURT: Let the record show that Mr. Magee requested summons of Luther Ricketts, Don R. Lee, Billy Smith, Thomas Williams, Amos Barnett, and Calvin Baker, all of Kilby Prison, and Donald Brewer, Robert Hornbuckle and Jimmy Shepard of Atmore Prison as witnesses in his behalf in this case. The Court directed Mr. Magee that he would have to show cause for summoning the witnesses and the Defendant—

"MR MAGEE: I object to all of that. I also want to make that a part of the record.

"THE COURT: Wait until we get to it. And that you refused to show cause on the grounds that—

"MR. MAGEE: I didn't say that, Your Honor. I want it put into the record what I said. I said that my constitutional rights gave me the right to refuse to identify what any witness would testify to until he testifies on the stand.

"THE COURT: Let the record show that the Court disallows the summoning of these witnesses, unless the Defendant gives a showing as to the materiality of their testimony in this case that he is charged with. Let the record show that the motion to show cause as to the absent witnesses was made by the State of Alabama, which said motion was granted by the Court.

"MR. MAGEE: I would like the record to show that two of the witnesses were present when the alleged crime that I am charged with was committed. I would also like to point out—

"THE COURT: Wait just a minute. The Court offered you an opportunity to show cause at the time and you refused to do so.

"MR. MAGEE: I stand on my constitutional rights.

"THE COURT: I understand that. Do you wish to make a showing?

"MR. MAGEE: I would like the record to show, Your Honor, that all the persons named, with the exception of two, were here in Huntsville at the time the crime was committed.

"MR. YOUNGER: I would like the record to further state if this Defendant made a—

"MR. MAGEE: I object to Mr. Younger putting anything into the record. I object to anything he says going into the record.

"MR. YOUNGER: We had started to say that we would like the record to show that in the event that this Defendant made a showing for the absent witnesses, that we would expect that the state would admit certain portions of that showing made by the Defendant.

Under Pirkle v. State, 31 Ala.App. 464, 18 So.2d 694, a deposition on written interrogatories (Code 1940, T. 15, § 301) was the exclusive mode for a defendant in a criminal cause to take testimony of a convict.

However, by Act 51, June 10, 1949, the Legislature amended Code 1940, T. 45, § 61, by adding:

" * * * Moreover, upon the *sworn petition* of the defendant in a criminal prosecution showing that a convict serving a sentence in the penitentiary *knows facts which would be beneficial to him, the judge may, if he believes the ends of justice will be served* thereby, order the issuance of such a writ to secure the appearance of the convict to testify on behalf of the defendant. The writ shall be served on the director [2] at least one week before the day appointed to have the witness in court. * * *" (Italics added.)

Of this § 61, as amended, McElroy on Evidence (2d Ed.), § 346.03, comments:

"This statute seems to invest the presiding judge with measurable discretion as to whether he will or will not order the issuance of the applied-for writ.

"Ordinarily, wisdom dictates that the request for an order for the issuance of the writ be granted.

"Whether a ruling by the presiding judge denying the application for an order for issuance of the writ is subject to review by mandamus before trial or on appeal after final judgment, for abuse of discretion (i. e., in more polite terminology 'misuse of discretion'), seems not to have been decided by any Alabama appellate court.

"As a final resort, the accused may take the convict's deposition under title 15, sec 301, quoted in sec 245.03 herein.[3] Pirkle v. State, 31 Ala App. 464, 18 So2d 694."

Constitution 1901, § 6, provides pertinently:

"That in all criminal prosecutions, the accused has a right * * *; to have com-

---

2. Act 202, July 17, 1953, § 7, transferred the director's powers, duties and obligations to the Board of Corrections. We assume without deciding that the Commissioner is the Board's agent for service of the writ.

3. "§ 301. The defendant in any criminal prosecution may take the testimony of any convict in the penitentiary, on interrogatories and notice, as in other cases of taking testimony by interrogatories, the convict's answer being taken on oath and returned with the commission, as in other cases; but the notice, in such case, with a copy of the interrogatories, must be served on the solicitor of the circuit in which the prosecution is pending."

pulsory process for obtaining witnesses in his favor; * * *

See Walker v. State, 117 Ala. 85, 23 So. 670.

■ After Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, we consider the due process clause of the Fourteenth Amendment has incorporated the requisites of the Sixth Amendment of the Federal Constitution as a rule for state criminal procedure. *Pointer,* being a case of the lack of the State's bringing in witnesses against a defendant to confront him, is not on its facts directly governing here.

However, the reasoning underlying the assimilation of the Sixth Amendment leaves little doubt that the court has finally come over to the conclusion of the rightness of the idea expressed by Mr. Justice Black in his dissent in Adamson v. People of State of California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903.

The Sixth Amendment reads, in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining Witnesses in his favor, * * *"

■ Compulsory process as a right as now fixed in American constitutional law is basic. However, its exceptions test the rule postulated thus:

(1) Process only runs with the writ and sovereignty in our law is largely territorial. Redmond v. State, 4 Ala.App. 190, 59 So. 181. Cf. United States v. Hoffman, D.C., 24 F.Supp. 847, and D'Aquino v. United States, 9 Cir., 192 F.2d 338.

(2) The person subject to the sought-for process may be under some prior and overriding obligation affecting his mobility, e. g.,

(a) soldiers, sailors and mariners. Lovejoy v. State, 247 Ala. 48, 22 So. 2d 537;

(b) convicts, as here;

(c) the superintendent or a physician at one of the State hospitals. Code 1940, T. 45, § 226.

(d) Ambassadors and, under treaty, consuls. In re Dillon, 7 Fed.Cas. page 710, No. 3914; United States v. Trumbull, 48 F. 94.

(3) The person whose testimony is wanted is an official of government whose office has prima facie a superior claim to his presence and time. Cf. United States v. Burr, 25 Fed.Cas. page 30, No. 1469d; Marbury v. Madison, 1 Cranch (5 U.S.) 137, 2 L.Ed. 60; May v. United States, 84 U.S.App.D.C. 233, 175 F.2d 994. *Sed quaere* as to Alabama—See McElroy, Evidence (2d Ed.), § 356.01.[4] Vide Parsons v. State, 251 Ala. 467, 38 So.2d 209.

Sometimes questions of competency or privilege are anticipated and confused with compulsion. Compare State v. Robertson, 133 La. 806, 63 So. 363, with People v. Wells, 272 N.Y. 215, 5 N.E.2d 206.

In Magee's case, we find no attempt made to comply with either statute as to the conditions precedent. That is, under § 61, as amended, supra, the record neither reveals nor refers to the filing of a sworn petition and hence no writ could have been made up so as to be served on the Board of Corrections at least a week before trial.

Nor under the requisites of § 301, supra, fn. 3, are we shown any notice to the District Attorney looking to the establishment of any commissions for taking depositions.

■ These statutory conditions are reasonable and are not a clog on the exercise of the constitutional right. We see no lack

---

**4.** "So great is the moral duty of every citizen to attend court and give testimony to aid in the ascertainment of the truth, that a public official, whatever privilege, if any, he may have not to obey a subpoena, ought not to exercise the privilege unless it is completely outside the bounds of reason for him to attend court."

of due process of law. Palmer v. State, 165 Ala. 129, 51 So. 358; Pittman v. State, 51 Fla. 94, 41 So. 385, 8 L.R.A.,N.S., 509; State v. Fouquette, 67 Nev. 505, 221 P.2d 404; State v. Blount, 200 Or. 35, 264 P.2d 419, 44 A.L.R.2d 711; United States v. Kinzer, D.C., 98 F.Supp. 6; Austin v. United States, 9 Cir., 19 F.2d 127; Thomas v. United States, 5 Cir., 168 F.2d 707. See also In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682.

In other states we find a split of authority as to the absoluteness of defendant's right of compelling a convict to testify in person. Compare State v. Waters, 39 Me. 54; State v. Kennedy, 20 Iowa 372; Willard v. Superior Court, 82 Cal. 456, 22 P. 1120; Roberts v. State, 94 Ga. 66, 21 S.E. 132 with Hancock v. Parker, 100 Ky. 143, 37 S.W. 594, and State v. Bagges, 350 Mo. 984, 169 S.W.2d 407.

Even in *Bagges,* supra, the court found nothing exceptional in the legislature's regulating habeas corpus ad testificandum so as to require proof of the materiality of the testimony of the proposed convict witness. See also Neufield v. United States, 73 App. D.C. 174, 118 F.2d 375.

Summarizing § 61, as amended, supra, we note in criminal prosecutions the defendant takes the following steps to get the personal presence of a penitentiary prisoner in his behalf:

1) File[5] a sworn petition with trial court; and

2) Show therein facts known by the convict witness "which would be beneficial to" the defendant.

Upon the timely filing of this sworn petition, the amendment to § 61, supra, then requires that *the judge shall, unless upon consideration of the petition he does not believe that the ends of justice so require,* order a writ in the nature of a habeas corpus ad testificandum.

5. Since the writ must be served a week beforehand on the Board of Corrections,

We have transposed the letter of the statute, "the judge may, if he believes the ends of justice will be served thereby," etc., into the mandatory expression as set out in italics above. To treat "may" as making the trial judge as the repository of Byzantine authority would be to substitute a whim for the rule of law and raise the letter of the law above the spirit of the Constitution.

We find in Williams v. State, 23 Ala.App. 297, 124 So. 402, apt words based on § 6, Constitution 1901—compulsory process:

" * * * the trial court erred prejudicially to appellant in refusing to issue an attachment for the witness Dr. Garrison. Every condition set forth as a prerequisite for its issuance in the law as it exists in our state seems to have been met by the circumstances, and for the refusal to issue the process the former judgment of affirmance will be set aside. * * * "

We think Neese, J., in United States v. McGaha, D.C., 205 F.Supp. 949, has appreciated the niceties of balancing the constitutional requisites in a setting of possible abuse by prisoners wanting one day excursions beyond the walls for their fellow inmates. We quote in part:

"It is well settled that this rule [17(b), Fed.Rules Crim.Proc.] does not accord the indigent defendant an absolute right to subpoena witnesses at the expense of the government, but there is, and must be, a wide discretion vested in the district judges to prevent abuses of such process as often are attempted by some defendants. * * *

"The request should be carefully scrutinized to assure the accused's rights under the Sixth Amendment, but the Court has the corresponding duty to explore the premise of the request and to prevent useless or abusive issuance of the process. Murdock v. United States, C.A. 10th (1960), 283 F.2d 585, 587 [4, 5].

it would seem that it would be prudent to file two weeks before trial.

"The exercise of the trial court's discretion is a matter which is not subject to review by appellate courts in the absence of a *clear* abuse of discretion. \* \* \*" (Italics added.)

Bacon v. State (Tenn.1964), 385 S.W. 2d 107:

"A trial judge has no discretion as to who he shall allow a defendant to subpoena. If a prospective witness is or probably will be a material one then a defendant has a constitutional right to have compulsory process. The matter turns on whether the issuance of process would in fact be an abuse of process, and, if the Court finds such is the case the Court has power to prevent such abuse."

See also People v. Stabler, 202 Cal.App. 2d 862, 21 Cal.Rptr. 120, and People v. Davenport, 210 Cal.App.2d 335, 26 Cal. Rptr. 753.

As a final consideration, we think the fact that the would-be witness is under sentence of imprisonment is a factor.

"Viewed also from a practical point of view, it would subject the warden to unnecessary risk, as a prisoner could designedly file a petition in some remote county of the state, and in the act of transportation could, by prearrangement, meet confederates who would effect his release. For that reason also this court should view with caution any order which by this procedure would open the prison doors."—Ex parte Bagwell, 26 Cal.App. 2d 418, 79 P.2d 395.

 Since Magee never crossed the threshold of § 61, as amended, supra, nor of of § 301, supra, and since we think § 6 of the Constitution of 1901 is not self-executing for compulsory process so far as convicts are concerned, we consider the trial judge ruled correctly.

The judgment below is due to be

Affirmed.

